UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF STATE,<br><br>    Defendant. | Civil Action No.  15-687 (JEB) |

**MEMORANDUM OPINION**

    This is yet another case spun off from the e-maelstrom swirling around Hillary Clinton's use of a private server during her time as Secretary of State. At issue here is the sufficiency of the State Department's response to a Freedom of Information Act request by Plaintiff Judicial Watch that sought records pertaining to the production of certain Clinton emails. Judicial Watch contends that Defendant improperly withheld, in whole or in part, 30 such documents under Exemption 5 of FOIA. After reviewing these records *in camera*, the Court disagrees. As such, it will grant the State Department's Motion for Partial Summary Judgment as to this FOIA request.

**I.    Background**

    A cursory summary is all that is needed to tee up the narrow issue now at play. On March 6, 2015, Plaintiff submitted FOIA request F-2015-05048 to Defendant, seeking certain records either relating to "the production of 55,000 emails by former Secretary of State Hillary Clinton" or containing communications between State Department employees and Clinton (or her associates) about emails she sent from non-"state.gov" email addresses. See ECF No. 25

(Declaration of Eric Stein), ¶ 4.  In other words, the documents sought were not the emails themselves, but rather discussions <u>about</u> the emails.

When State failed to respond to this request within certain statutory time limits, Judicial Watch filed this action to, *inter alia*, compel disclosure of the records.  <u>See</u> ECF No. 1 (Complaint).  Defendant subsequently turned over 87 documents in full, but partially or wholly withheld another 153 under various FOIA exemptions.  <u>See</u> Stein Decl., ¶¶ 10-13.

The parties then cross-moved for partial summary judgment as to the sufficiency of this determination, ultimately disputing only whether the Department had properly withheld 30 records under Exemption 5.  <u>See</u> ECF No. 25 (Motion); ECF No. 31 (Cross-Motion).  To aid in resolving that question, on January 24, 2017, the Court ordered Defendant to produce the records for *in camera* review.  <u>See</u> Minute Order of Jan. 24, 2017.  Having now completed that evaluation, the Court is primed to resolve the parties' present dispute.

**II.   Legal Standard**

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of material fact is one that would change the outcome of the litigation. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").  In the event of conflicting evidence on a material issue, the Court is to construe the conflicting evidence in the light most favorable to the non-moving party.  <u>See</u> <u>Sample v. Bureau of Prisons</u>, 466 F.3d 1086, 1087 (D.C. Cir. 2006).  Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party

submits his own affidavits, declarations, or documentary evidence to the contrary. Neal v. Kelly, 963 F.2d 453, 456-57 (D.C. Cir. 1992).

"FOIA cases typically and appropriately are decided on motions for summary judgment." Defenders of Wildlife v. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v. U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007). In FOIA cases, the agency bears the ultimate burden of proof. See Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 n.3 (1989) (citations omitted). The Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are "accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).

**III.   Analysis**

Congress enacted FOIA in order "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976) (citation omitted). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citation omitted). The statute thus provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with

published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Consistent with this mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds. See id. § 552(a)(4)(B); Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 754-55 (1989). In making this determination, the court "[a]t all times . . . must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure.'" Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

Judicial Watch seeks the release here of 30 records that the State Department withheld in whole or in part under Exemption 5 of FOIA. This exemption from the statute's disclosure requirements allows an agency to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Under Exemption 5, the agency may thus refuse to turn over "documents[] normally privileged in the civil discovery context." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975). Although this exemption covers several privileges, the one in focus here is the deliberative-process privilege. This privilege shields internal agency "advisory opinions, recommendations and deliberations" from release in order to "protect[ ] the decision making processes of government agencies." Id. at 150 (quotation marks and citations omitted).

While Judicial Watch concedes that this privilege appears to exempt the material it seeks, it nevertheless invokes the narrow government-misconduct exception in an attempt to overcome that privilege for these records. Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs., 903 F. Supp. 2d 59, 68-69 (D.D.C. 2012) (explaining extreme government misconduct may override deliberative-process privilege in FOIA context); see also In re Sealed Case, 121 F.3d 729, 738 (D.C. Cir. 1997) ("[W]here there is reason to believe the documents sought may shed

light on government misconduct, the privilege is routinely denied [in non-FOIA cases], on the grounds that shielding internal government deliberations in this context does not serve the public's interest in honest, effective government.") (quotation marks and citations omitted).  In the FOIA context, this requires the party seeking the records to "provide an adequate basis for believing that [the material withheld] would shed light upon government misconduct."  Nat'l Whistleblower, 903 F. Supp. 2d at 67 (quoting Judicial Watch of Florida, Inc. v. Dep't of Justice, 102 F. Supp. 2d 6, 15 (D.D.C. 2000)); see also ICM Registry, LLC v. Dep't of Commerce, 538 F. Supp. 2d 130, 133 (D.D.C. 2008) (noting courts have applied this exception under FOIA in circumstances of extreme government wrongdoing).  A document sheds light on misconduct when it "reflects any governmental impropriety," but not when it merely reflects a "part of the legitimate government process intended to be protected by Exemption 5."  Nat'l Whistleblower, 903 F. Supp. 2d at 68 (citation omitted).  Indeed, this limit on the exception is necessary to assure that it does not swallow the deliberative-process rule.  ICM Registry, 538 F. Supp. 2d at 133.  The public continues, after all, to have a clear interest in preserving the space necessary for government actors to engage in the type of honest and appropriate deliberations that preserve effective governance, even when they concern past misconduct.

      Judicial Watch nevertheless contends that the exception operates here because the records would purportedly illuminate the Department's complicity in Clinton's misuse of a private server or, alternatively, expose later discussions by State employees "to create misinformation to minimize the public's perception" of that conduct.  See Cross-Mot. at 3.  The latter, so the argument goes, would constitute an improper purpose that could alone amount to sufficient government malfeasance.  See ICM Registry, 538 F. Supp. 2d at 134 (implying in *dicta* that "nefarious purpose" might warrant application of government-misconduct exception).

5

After reviewing the 30 records *in camera*, the Court finds no support for Plaintiff's position. Even assuming that the conduct hypothesized by Judicial Watch would rise to the level required for the narrow government-misconduct exception, the records show no such acts. See Walker v. City of New York, No. 98–467, 1998 WL 391935, at *1 (S.D.N.Y. July 13, 1998) (concluding upon review of documents that government-misconduct exception did not apply as they contained no indication of alleged wrongdoing). More specifically, the material withheld does not provide insight into Clinton's misuse of the private server, nor does it reveal any purported Department complicity in that act or effort to downplay her conduct after the fact.

Instead, as Defendant indicates, these records appear to consist of ordinary discussions about legitimate policy ends. For example, the bulk is made up of a draft letter from a Deputy Assistant Secretary to the National Archives and Records Administration. See ECF No. 38 (Second Vaughn Index), Category 1. This letter provides a general response to the latter agency's inquiry into the State Department's management of records after news of Clinton's private server broke. Id. It contains run-of-the-mill track changes, red-line edits, and innocuous comment bubbles suggesting revisions to the precision of the language by several employees. None of these edits offers insight into any potential government malfeasance. State, moreover, already turned over the finalized version of this letter to Plaintiff as part of its response to this FOIA request, see ECF No. 33 (Reply), Exh. 2, and the draft appears to shed no further light on the Department's actions.

Another large chunk of the contested withholdings are (often repetitive) portions of short emails exchanged between various State Department employees. See Second Vaughn Index, Category 2. Many of these redacted snippets discuss the potential point of contact for responses to a draft letter that the agency sent out to former Secretaries of State to inquire about their email

6

use during their service. Others discuss routine administrative tasks related to that same letter, including an exchange over who among several records officials should sign the letter under Department protocols. These redacted sentences are well within the realm of appropriate and reasonable discussions that might be expected of government officials attempting to faithfully fulfill their statutory obligations.

A third category of partially redacted emails contains conversations between State employees about potential steps that the agency should take in responding to public revelations about Clinton's use of the server. See Second Vaughn Index, Category 3-6. Some of these emails simply forward news articles about this topic and contain no additional information about any Department complicity in the server's use. As State points out, this lack of information is not surprising given that all of the records at issue in this FOIA request post-date Clinton's time as Secretary and thus her use of the server. See Reply at 5. Nor do any of these redacted emails contain hints of any nefarious government action or motive in responding to that conduct. One, in fact, largely consists of a draft webpage link for the public release of Clinton's emails. See Second Vaughn Index, Category 5. While others do discuss the scope and methodology of State's efforts to recapture emails, the communications again appear to be well within the realm of legitimate policy ends. These records, in other words, demonstrate only that State employees were actively offering various opinions as they worked to ensure that the agency appropriately responded to the news swirling around Clinton's emails.

The final document withheld in full by State contains draft talking points prepared by a Department attorney for a discussion with Congress regarding the production of Clinton emails to the Select Committee on Benghazi. See Second Vaughn Index, Category 7. Although this document contains the general fact that Clinton provided some emails to the Department that it

was working to turn over, it provides no insight into any government complicity in her use of the private server. The talking points, moreover, do not indicate an effort to downplay that conduct.

The Court, therefore, concludes that Judicial Watch has not provided a sufficient basis to believe that the information withheld by the State Department would shed light on any government misconduct. Because the documents do not contain such material, there is also nothing that could be reasonably segregated and turned over to Plaintiff under this exception. See 5 U.S.C. § 552(b) (requiring agencies to release "[a]ny reasonably segregable portion" of responsive records "after deletion of the portions which are exempt under [FOIA]"). The Department, in fact, segregated individual sentences in most of the records and fully explained how all the withheld information fell within the deliberative-process privilege. See Stein Decl., ¶ 53. The Court confirms that these representations are accurate upon its own review as well.

## IV.  Conclusion

For the reasons explained above, the Court concludes that the State Department has met its burden to demonstrate that it properly withheld in whole or in part these 30 documents under Exemption 5's deliberative-process privilege. It thus need not address the other privileges cited to justify these withholdings. A contemporaneous Order will issue granting Defendant's Motion for Partial Summary Judgment and denying Plaintiff's Cross-Motion for the same.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  February 21, 2017