# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC., <br><br> Plaintiff, <br><br> v. <br><br> REX TILLERSON, in his official capacity as Secretary of State, <br><br> Defendant. | Civil Action No. 15-cv-0785 |
| CAUSE OF ACTION INSTITUTE, <br><br> Plaintiff, <br><br> v. <br><br> REX TILLERSON, in his official capacity as Secretary of State, and DAVID S. FERRIERO, in his official capacity as Archivist of the United States, <br><br> Defendants. | Civil Action No. 15-cv-1068 |

## AMENDED SUPPLEMENTAL DECLARATION OF E. W. PRIESTAP
### FEDERAL BUREAU OF INVESTIGATION

I, E.W. Priestap, hereby declare and say:

1. I have been a Special Agent with the Federal Bureau of Investigation (FBI) for eighteen (18) years. I was assigned to the Counterintelligence Division at FBI Headquarters as the Assistant Director in December 2015. Before then, I served as the Deputy Assistant Director of the Intelligence Operations Branch in the Directorate of Intelligence at FBI Headquarters. Prior to that, I was the Special Agent in Charge of the Counterintelligence Division in the New

1

York Field Office in 2013, where I supported counterterrorism and counterintelligence operations since 2006 as a Supervisory Special Agent.

2. On July 10, 2015, the FBI initiated a full investigation based upon a referral from the US Intelligence Community Inspector General (ICIG), submitted in accordance with Section 811(c) of the Intelligence Authorization Act of 1995 and dated July 06, 2015, regarding the potential unauthorized transmission and storage of classified information on the personal e-mail server of former Secretary of State Hillary Clinton (Clinton). In my capacity as the Assistant Director assigned to counterintelligence and counterespionage matters, I supervised the Clinton Server Investigation. I make this supplemental declaration to provide the Court with additional background information regarding investigative efforts taken to obtain repositories of e-mail which would assist the FBI in investigating the potential unauthorized transmission and storage of classified information. The information stated herein is based on my personal knowledge, my review and consideration of documents and information available to me in my official capacity, and information furnished to me by Special Agents and other employees of the FBI.

## SCOPE OF THE FBI'S INVESTIGATION

3. As discussed above, the FBI's full investigation was predicated upon a referral from the ICIG notifying the FBI of the potential unauthorized transmission and storage of classified information on the personal e-mail server of former Secretary Clinton. Based upon the ICIG's referral, the FBI's national security investigation was limited in scope to determining: 1) whether classified information was transmitted or stored on unclassified systems in violation of federal statutes; and 2) whether classified information was compromised by unauthorized individuals, to include foreign governments or intelligence services, via cyber intrusion or other

2

means. The scope of the FBI's investigation was further limited to former Secretary Clinton's tenure at the Department of State (January 21, 2009 to February 01, 2013).

4. Through the course of the investigation, the FBI sought to obtain all identified e-mail communications that were transmitted or stored upon former Secretary Clinton's private e-mail servers. These investigative efforts consisted of obtaining e-mail repositories through consent of former Secretary Clinton, her representatives, former members of her staff, the State Department, and numerous other government agencies with which the Secretary communicated. In the course of its investigation, the FBI also interviewed individuals who had the most frequent apparently work-related communications with Secretary Clinton and obtained additional e-mail correspondence between some of those individuals and Secretary Clinton during her tenure, most of which were copies already collected.

5. In addition, the FBI also utilized legal process, to include grand jury subpoenas, to obtain additional repositories of e-mail. The FBI's use of legal process was limited due to the scope of the investigation and the need to establish that sufficient probable cause existed to believe classified e-mails resided within any identified e-mail account, computer, cellular or wireless mobile device, or other electronic device of investigative interest in order to obtain any search warrant.

6. As discussed in my first declaration, the FBI's investigation identified that former Secretary Clinton utilized two e-mail addresses – hr15@mycingular.blackberry.net and hr15@att.blackberry.net – prior to her conversion to the hdr22@clintonemail.com address on March 18, 2009. Although this time period was of particular interest to the FBI's investigative efforts in order to understand the rationale for establishing a private e-mail server, the FBI's investigation was limited and focused on any potential unauthorized transmission and storage of

3

classified information on the personal e-mail server during Clinton's tenure as Secretary of State (January 21, 2009 to February 01, 2013). As a result of the limitation, the responsive period the FBI had the legal authority to obtain the e-mails referred by the Plaintiff as the "BlackBerry e-mails" was from the period of January 21, 2009 through March 18, 2009.

7.  During the course of the FBI's investigation, limited e-mail communications during the period of January 21, 2009 through March 18, 2009 for the two e-mail accounts in question were obtained and have since been turned over to the Department of State for agency record determination. The FBI utilized numerous investigative methods to obtain any remaining BlackBerry e-mails from January 21, 2009 through March 18, 2009, to include primarily seeking consensual access to any e-mail repositories and obtaining personal electronic devices used by former Secretary Clinton which may have contained relevant e-mails. In addition, the FBI utilized Grand Jury subpoenas seeking to confirm whether e-mail communication data from the service providers that facilitated former Secretary Clinton's access to e-mail during her tenure was still maintained.

8.  Specifically, the FBI served Grand Jury subpoenas on Research in Motion Limited (RIM), the maker of BlackBerry electronic devices; Cingular Wireless and its successor AT&T Wireless, both of which provided mobile phone service and therefore data access; and another service provider, which at the time provided the e-mail service utilized by former Secretary Clinton. Consistent with its normal practice when seeking e-mail data and with 18 U.S.C. § 2703, the FBI first requested "customer or subscriber account information for any account associated with hr15@att.blackberry.net and hr15@mycingular.blackberry.net" from all service providers.

4

9.  The information sought consisted generally of electronic communications transaction information (*i.e.*, to/from/headers/subject lines of e-mails) but no content. Consistent with 18 U.S.C. § 2703, the FBI cannot request content via a grand jury subpoena, and would instead have had to establish probable cause to obtain any search warrant.

10. In each instance, all four service providers responded to the FBI that they had maintained accounts associated with those two addresses during the period of interest, but confirmed that electronic communications transaction information for the accounts was no longer retained by the respective companies and, therefore, the service providers were unable to produce additional information to the FBI for either account. This result is consistent with e-mail accounts associated with BlackBerries, as my understanding is that the BlackBerry devices at the time "pulled" information off servers and maintained it on the device, rather than on a separate or "cloud" server. The FBI reissued the Grand Jury subpoenas to confirm these responses and contacted the service providers to further discuss. However, again, the service providers confirmed that no data was stored relating to these the accounts, and therefore, no electronic communications transaction information content would be available.

11. In instances where the FBI discovered evidence of the potential unauthorized transmission of classified information from the personal e-mail servers to private third party e-mail accounts of individuals with whom Secretary Clinton corresponded and could establish sufficient probable cause, the FBI sought additional legal process, to include grand jury subpoenas, in order to obtain additional e-mails relevant to the FBI's investigation.

## CONCLUSION

12. It is my opinion that the FBI undertook all reasonable and comprehensive efforts to recover e-mail communications relevant to its investigation of the potential unauthorized

transmission and storage of classified information on the personal e-mail server of former Secretary Clinton. The FBI sought all potentially work-related e-mails from the former Secretary's tenure and then provided relevant e-mails for classification reviews to the appropriate U.S. Government agencies. In addition to the records identified above and associated with the "BlackBerry e-mails," as of July 2016, the FBI recovered several thousand unique work-related and personal e-mails from Clinton's tenure associated with the hdr22@clintone-mail.com e-mail address that were not provided by Williams & Connolly as part of Clinton's production to the Department of State. The FBI has since turned over all of these e-mails and other documents to the Department of State for agency record determination.[1] In connection with an unrelated pending investigation, the FBI learned of the existence of e-mails that appeared pertinent to the Clinton investigation and took appropriate steps to allow investigators to review those e-mails. Investigative activities undertaken in October 2016 with respect to those e-mails resulted in additional e-mails being discovered which may be potentially work-related, which were primarily associated with the clintonemail.com domain. The FBI provided these e-mails to the Department of State for agency record determination on June 15, 2017, which concluded the FBI's transfer of potential agency records to the Department of State. It is my opinion that there were no further steps that could have been reasonably undertaken by the FBI that would have recovered additional Clinton work-related e-mails.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibit A attached hereto is a true and correct copy.

---

[1] The FBI did not and could not make assessments of whether these e-mails were Department of State records under the Federal Records Act.

Executed this __13__ day of September, 2017.

_E. W. P_____
E. W. Priestap
Assistant Director
Counterintelligence Division
Federal Bureau of Investigation